# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

JIN YOUNG KIM, )
 )
    Plaintiff, )
 )
v. ) No. CIV-18-643-G
 )
JTA CUSTOM HOMES, INC., )
and JAY CHARLES WANTLAND, )
 )
    Defendants. )

## ORDER

Now before the Court is the Motion to Dismiss filed by defendant JTA Custom Homes, Inc. ("JTA"),[1] pursuant to Federal Rule of Civil Procedure 12(b)(2).[2] *See* Def.'s Mot. (Doc. No. 6). Plaintiff Jin Young Kim has not responded.

---

[1] Although JTA has contended that this action "should be dismissed in its entirety because there is no subject matter jurisdiction . . . , there is no personal jurisdiction over the defendants, and this court is the improper venue within which to hear this dispute[,]" Doc. No. 7, at 1, JTA only addressed this Court's lack of *in personam* jurisdiction. The Court has nevertheless determined *sua sponte* that it has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 since the citizenship of the parties is diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

[2] "A defect in the . . . [C]ourt's jurisdiction over a party . . . is a personal defense which may be . . . waived by [that] . . . party." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986)(citation omitted). "Improper venue is [also] . . . a defense personal to a party and may be waived." *Thompson v. United States*, 312 F.2d 516, 519 (10th Cir. 1962)(citation omitted). Accordingly, as personal defenses, neither lack of *in personam* jurisdiction nor improper venue "may . . . be raised by another on behalf of a party[,]" *Williams*, 802 at 1202, or raised *sua sponte* by the Court.

Thus, while it appears that JTA has sought dismissal of this action not only on its own behalf, but also on behalf of co-defendant Jay Charles Wantland based on lack of personal jurisdiction and improper venue, the Court may only consider whether JTA is entitled to that relief. And because the Court finds the issue of personal jurisdiction over

Rule 7.1(g) of the Local Civil Rules for this Court states in part that "[a]ny motion that is not opposed within 21 days may, in the discretion of the court, be deemed confessed."  Rule 7.1(g), *supra*.  In *Issa v. Comp USA*, 354 F.3d 1174 (10th Cir. 2003), the Court of Appeals for the Tenth Circuit addressed whether a court can deem confessed an unopposed motion and grant the motion without performing the analysis required by the applicable federal procedural rule.  The circuit court held that while a district court may consider a motion "uncontested for lack of a timely response, it cannot grant [that motion] . . . unless the moving party has met its . . . burden . . . under" the relevant procedural rule and extant case law.  *Id*. at 1177.

Accordingly, the Court finds it may not grant JTA's Motion to Dismiss merely because Kim has failed to file a timely response; rather, the Court must engage in the analysis required by Rule 12(b)(2)[3] and pertinent case law to determine whether this Court lacks *in personam* jurisdiction over JTA.

---

JTA is dispositive, the Court need not and has not addressed whether venue is proper in this district.

[3] In determining whether dismissal under Rule 12(b)(2) is warranted, the Court has discretion to decide which procedure to use to resolve the issue of personal jurisdiction raised by JTA.  *E.g.*, *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). "Facts regarding jurisdictional questions may be determined by reference to affidavits [or other written materials], by a pretrial evidentiary hearing, or at trial when the jurisdictional issue is dependent upon a decision on the merits."  *Id*. (citations omitted).  While the plaintiff always has the burden of proving personal jurisdiction, that "burden varies depending upon the pretrial procedure employed by the . . . [C]ourt."  *Id*. (citations omitted).

After examining the instant record, and because Kim has not responded to JTA's motion, the Court has concluded that the issue of personal jurisdiction should be resolved by reviewing the allegations in the complaint and the Affidavit of Suzanne Keisling and the exhibits attached thereto submitted by JTA.  *See* Doc. No. 7-1.  Accordingly, Kim "need

Kim, a citizen of the State of Oklahoma, has alleged in his complaint that JTA is incorporated under the laws of the State of Missouri and has its principal place of business in Liberty, Missouri. *See* Compl. (Doc. No. 1, ¶ 2). He has further alleged that JTA "is engaged in the business of constructing single-family residences in the State of Oklahoma,"[4] and that co-defendant Jay Charles Wantland, as JTA's owner, acted on JTA's behalf in the transactions giving rise to this lawsuit.

Kim has contended that on March 3, 2017, he and Wantland met in Oklahoma City, Oklahoma, to execute a contract, wherein JTA agreed to build a structure to be known as "Dragon Kim's Training Facility," *id.* ¶¶ 9, 10, in Highland Village, Texas. *See id.* ¶ 11. Kim has also contended in his complaint that on March 18, 2017, he and JTA entered into a residential construction contract "for the building and construction of a two-story, three-bedroom single family home on land owned by . . . Kim . . . in the City of Flower Mound in Denton County, Texas." *Id.* ¶ 4. Kim has complained that JTA has breached the terms of the parties' contracts because the work required under the contracts has not been completed and that he is therefore entitled to damages.

---

only make a prima facie showing,'" *Oaklawn Apartments*, 959 F.2d at 174 (quoting *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th 1984) (further citations omitted)), and "[t]he [jurisdictional] allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavit[ ]," *Behagen*, 744 F.2d at 733 (citation omitted).

[4] That allegation is countered by the Affidavit of Suzanne Keisling (October 1, 2018) (Doc. No. 7-1, ¶ 5) ("JTA . . . does not do business in Oklahoma"). Kim has failed to controvert that affidavit other than by the conclusory allegation in his complaint.

"[J]urisdiction of the person traditionally has been analyzed in terms of two different elements." 1 R. Casad & W. Richman, *Jurisdiction in Civil Actions* § 1-1[2][a] (3d ed. 1998) (hereinafter "*JCA*"). The first element—process—pertains to the "officially prescribed procedural steps [that] must be taken to connect the party to the [C]ourt's authority," *id.* § 1-1[2][b]; "[t]he act of performing the prescribed steps [constitutes] . . . service of process." *Id.* (emphasis deleted). That is to say, "'service of process . . . provides the mechanism by which [this] [C]ourt having . . . jurisdiction over the subject matter of [the] action asserts jurisdiction over the person of the party served.'" *Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008) (quoting *Okla. Radio Assocs. v. FDIC*, 969 F.2d 940, 943 (10th Cir. 1992)).

Because JTA has not claimed that it has been improperly served in this case, *see* Doc. No. 4, the Court has considered the second element of jurisdiction over the person—basis, *see JCA* § 1-1[2][a]—which refers to "the relationship among the defendant, the forum, and the litigation . . . ." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (citation omitted).

In Oklahoma, a court may exercise jurisdiction over a nonresident defendant only (1) if it is statutorily authorized to do so, and (2) if its exercise of jurisdiction is consistent with the due process clause of the fourteenth amendment to the United States Constitution. *E.g.*, *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988). *Accord Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 805, 903 (10th Cir. 2017) (law of forum and

4

constitutional due process limitations govern personal jurisdiction in federal court); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1506-07 (10th Cir. 1995) (court must initially determine whether exercise of jurisdiction is sanctioned by state's long-arm statute, which is question of state law, and then determine whether exercise of jurisdiction comports with Constitution's due process requirements).

Because the applicable Oklahoma statute provides that a "court of this state may exercise jurisdiction on any basis consistent with the Constitution[s] of this state and . . . the United States," Okla. Stat. tit. 12, § 2004(F), Oklahoma's two-part test has "collapse[d] into a single due process analysis." *Rambo*, 839 F.2d at 1416; *e.g.*, *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1779 (2017).

In this context, due process requires a nonresident defendant to "have certain minimum contacts with . . . [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)) (further citations omitted).[5] Whether due process is satisfied in a given case depends upon "the quality and nature of," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), a nonresident defendant's "'contacts, ties, or relations,'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Int'l Shoe*, 326 U.S. at 319) (footnote omitted), with the forum state, and in evaluating a nonresident defendant's alleged activities the Court

---

[5] "[P]ersonal jurisdiction requirements 'must be met as to each defendant.'" *Newsome v. Gallacher*, 722 F.3d 1257, 1266 (10th Cir. 2013) (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)); *e.g.*, *Bristol-Myers,* 137 S. Ct. at 1783.

5

recognizes there are "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers*, 137 S. Ct. at 1780 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

"'A court with general jurisdiction may hear any claim against th[e] defendant, even if all the incidents underlying the claim occurred in a different state.'" *Heffington v. Puleo*, No. 18-3034, 2018 WL 4944402, at *2 (10th Cir. October 12, 2018) (quoting *Bristol-Myers*, 137 S. Ct. at 1780 (emphasis omitted)). "In contrast, a court may exercise specific jurisdiction 'only if the cause of action relates to the party's contacts with the forum state.'" *Id*. (quoting *Old Republic Ins.*, 877 F.3d at 904).

To establish that the Court has general jurisdiction, Kim must show that JTA's affiliations with Oklahoma "are so 'continuous and systematic' as to render [JTA] essentially at home in th[is] . . . State." *Goodyear Dunlop*, 564 U.S. at 919 (quotation omitted). While "[t]he 'paradigm' forums in which a corporate defendant is 'at home[ ]' . . . are the corporation's place of incorporation and its principal place of business," *BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014); *Goodyear Dunlop*, 564 U.S. at 924), the Court's "exercise of general jurisdiction is not limited to these forums." *Id*. "[I]n an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id*. (quoting *Daimler*, 134 S. Ct. at 761 n.19).

JTA is not incorporated in Oklahoma and does not maintain its principal place of business in this state. "Nor is [JTA] . . . so heavily engaged in activity in [Oklahoma] 'as to render [it] essentially at home' in th[is] State." *Id.* at 1559 (quotation omitted). Rather, the record reflects that JTA, a citizen of the State of Missouri, executed at most two contracts in this forum in March 2017. That conduct falls far short of the "continuous and systematic" and highly "substantial" conduct that is necessary to support a finding that this is the "exceptional case" where the nonresident defendant is subject to general jurisdiction.

The second type of *in personam* jurisdiction—"specific" jurisdiction—"calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Old Republic Ins.*, 877 F.3d at 904 (quoting *Burger King*, 471 U.S. at 476-77) (further citation omitted). The first step—the minimum contacts test—itself "encompasses two distinct requirements." *Id.*

First, "the defendant [must have] 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (citing *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004); *see Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005); *OMI Holdings, Inc. v. Royal Ins. Co. of Can.,* 149 F.3d 1086, 1092 (10th Cir. 1998)).[6] Second, "'the plaintiff's

---

[6] The Tenth Circuit has observed that "[t]he first element [of the Court's specific jurisdiction analysis] can appear in different guises. In the tort context, [courts] often ask

7

injuries must arise out of [the] defendant's forum-related activities.'" *Old Republic Ins.*, 877 F.3d at 904 (quotation and further citation omitted) (footnote deleted).

Even though Kim's burden at this stage "is light," *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992), the Court finds that he has not made the necessary showing to support this Court's exercise of specific jurisdiction over JTA. As stated, the first step of the Court's specific jurisdiction analysis—the minimum contacts test—encompasses the distinct requirement that "the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov,* 514 F.3d at 1071 (citations omitted). "'Purposeful availment analysis turns upon whether the defendant's contacts are attributable to [its] own actions or solely to the actions of the plaintiff . . . [and generally] requires . . . affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state.'" *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1535 (10th Cir. 1996) (quoting *Rambo*, 839 F.2d at 1420 (further quotation omitted)). It is difficult to see how JTA's actions allowed or promoted business in this state when the contracts were to be performed in Texas. "[T]he

---

whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, . . . [courts] sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov,* 514 F.3d at 1071 (citations omitted). The circuit has further observed, "[i]n any event, the terms 'purposeful direction' and 'purposeful availment' denote the same requirement," *Old Republic Ins.*, 877 F.3d at 904 n.11, and have "the shared aim of . . . ensur[ing] that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov*, 514 F.3d at 1071 (quotation omitted).

mere foreseeability of consequences within the forum . . . , without more, is insufficient as a basis for jurisdiction." *Id*. (citations omitted) (footnote deleted).

In *Burger King*, the United States Supreme Court addressed "whether and to what extent a contract can constitute a 'contact' for purposes of due process analysis," 471 U.S. at 478 (footnote omitted), and found that "[i]f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, . . . the answer clearly is that it cannot." *Id*. The Supreme Court observed that

> a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Id*. at 479 (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316-17 (1943)).

In those situations involving interstate contractual obligations, it is only those

> parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" [that] are subject to regulation and sanctions in the other State for the consequences of their activities.

*Id*. at 473 (citations omitted). Thus, "it is the full scope of a defendant's behavior, not simply the place of contract formation, that determines whether a court may exercise specific personal jurisdiction over a non-resident defendant in a breach of contract action." *Pro Axess*, 428 F.3d at 1279 n.6 (citing *Burger King*, 471 U.S. at 478-79).

In the instant case, there are no allegations in the complaint that suggest that JTA itself "reach[ed] out beyond," *Burger King*, 471 U.S. at 473, the state of Missouri and

9

formed an ongoing relationship with Kim in Oklahoma, that the parties pursued a continuous course of dealing beyond March 2017, or that the parties even contemplated a continuing business relationship as is required for a finding of minimum contacts. *Accord AST Sports Science, Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1059 (10th Cir. 2008) (contract alone does not subject nonresident defendant to jurisdiction of forum; rather, plaintiff must provide additional evidence of pursuit of business relationship). Thus, there has been no showing that JTA's contacts with the forum are sufficient "to create 'continuing obligations' between [JTA] and [Kim], thereby establishing a 'substantial connection' with the state of [Oklahoma] and supporting [this] . . . [C]ourt's exercise of [specific] personal jurisdiction over [JTA]." *Id.* at 1060 (citation omitted).

Accordingly, because the Court lacks both general and specific jurisdiction over JTA, the Court

(1) GRANTS JTA's Motion to Dismiss (Doc. No. 6) filed on October 2, 2018; and

(2) DISMISSES Kim's breach of contract claim against JTA without prejudice to refiling.

IT IS SO ORDERED this 2nd day of November, 2018.

_____
CHARLES B. GOODWIN
United States District Judge